GENICA, INC.

v.

**HOLOPHANE DIVISION OF MANVILLE CORPORATION.**

No. 86–0254.

United States District Court,
E.D. Pennsylvania.

Jan. 30, 1987.

C. Gary Wynkoop, Stephen M. Orlofsky, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for plaintiffs.

Barbara W. Mather, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATZ, District Judge.

Plaintiff, Genica, Inc. ("Genica") is a corporation organized and existing under the laws of Commonwealth of Pennsylvania with its principal place of business in Drexel Hill, Pennsylvania. Defendant, Holophane Division of Manville Corporation ("Holophane") is a corporation organized

and existing under the laws of the State of Delaware with its principal place of business in Denver, Colorado. Jurisdiction is thus founded upon diversity of citizenship, and the amount in controversy, which exceeds Ten Thousand Dollars.

The Court heard this cause of action in a two day non-jury trial. Plaintiff Genica put on two witnesses: Gerald N. Carozza, President of Genica, and Gerald Rose, a Certified Public Accountant from the firm of Seligman, Cupersmith & Co., who handled Genica's account. Defendant Holophane put on three witnesses: David Meredith, Holophane's Marketing Manager, Elsie Madsen, a financial and marketing analyst with Holophane and Aage Emanuelson, the President of Holophane-Mexico. Plaintiff introduced as well the deposition testimony of Raul Meza, Holophane-Mexico's former President, and Scot Anderson, the Proposal Coordinator and former Purchasing Manager for Morrison-Knudsen International in Columbia, South America. The Court, after evaluating all of the testimony and examining the documentary evidence, finds as follows:

### Findings of Fact

1. In 1962 Gerald N. Carozza joined Holophane as a sales engineer. He was employed in a variety of sales and managerial positions until January 1980. Carozzi's responsibility during much of this period was for Holophane's sales efforts in Central and South American and the Caribbean. In 1978 or early 1979, the Holophane division manager suggested that Carozza form a company to take over the territory of Central and South America and the Caribbean as the exclusive sales agent. Testimony of Gerald Carozza.

2. On November 30, 1979, Genica and Holophane entered into a Manufacturer's Agent Agreement ("Agreement"). Plaintiff's Exhibit No. 1. According to the Agreement, Genica was to receive commissions on all lighting products sold by Holophane and shipped by Holophane into South and Central America and the Caribbean. *Id.* at ¶¶ 1, 4, 9. The contract was later expanded to include shipments from Holophane-Mexico, Holophane-Canada and Holophane-England. Testimony of Gerald N. Carozza; Testimony of David Meredith; Plaintiff's Exhibit No. 2; Defendant's Exhibit No. 7. Under the contract Genica was not entitled to commissions on sales made by third parties who were not Holophane. Testimony of David Meredith; Plaintiff's Exhibit No. 1.

3. Under the Agreement terms, Genica was initially to receive a twelve percent (12%) commission on completed fixtures and other components manufactured by Holophane. Plaintiff's Exhibit No. 1 at ¶ 9(a). As of January 1, 1983 this commission rate was increased to thirteen and one-half percent (13.5%) for sales up to five hundred thousand dollars ($500,000). Genica received five percent (5%) commission on vendor items and certain non-compensable items. Plaintiff's Exhibit No. 1 at ¶ 9(a); Testimony of David Meredith. Plaintiff's Exhibit No. 3 On sales where Genica purchased the product, Genica was also entitled to a profit mark-up. Testimony of Gerald N. Carozza. The contract precluded Genica from carrying other product lines. Plaintiff's Exhibit No. 1 at ¶ 7.

4. Prior to Genica's formation, Cinducoll, Ltd., a Colombian company, was a distributor of Holophane. To assure Genica's sole responsibility for distribution, Holophane terminated this relationship in 1979. Testimony of Gerald N. Carozza; Plaintiff's Exhibits No's. 13, 18; Defendant's Exhibit No. 8.

5. Cinducoll had purchased refractor glass and components through Genica until June of 1982. Plaintiff's Exhibit No. 8. Thereafter Cinducoll did not purchase from Genica nor was Genica advised of any sales from Holophane or its subsidiaries to Cinducoll. Testimony of Gerald N. Carozza. Holophane-USA did not sell any merchandise to Cinducoll after 1982. Testimony of David Meredith; Testimony of Elsie Madsen. Holophane-Mexico made $34,806 of sales to Cinducoll, but commissions have been paid to Genica on those sales. Testi-

mony of David Meredith; Plaintiff's Exhibit No. 8; Defendant's Exhibit No. 7.

5a. Cinducoll was not a licensee or agent of Holophane. Holophane's headquarters in Denver handles licensing for Holophane USA and Holophane Mexico, and there is no record of any license to Cinducoll. Testimony of David Meredith. Neither Holophane-USA or Holophane-Mexico have entered into any license agreements with Cinducoll. Plaintiff's Exhibit No. 18. Testimony of David Meredith; Testimony of Aage Emanuelsen.

6. Genica's claim for unpaid commissions focused on a sale of lighting products by Cinducoll to Morrison-Knudsen International for a coal mine in Baranquilla, Colombia. There was no evidence in the record, however, either of Cinducoll being a licensee or agent of Holophane when it made the sale, *see supra*, nor of Holophane making any unreported sales to Cinducoll in connection with the Columbian coal project. Holophane referred all Morrison-Knudsen inquiries to Genica during the term of Genica's agreement. Defendant's Exhibits No's. 29, 30. Holophane advised Morrison-Knudsen that Cinducoll did not represent Holophane and that the materials Cinducoll ws offering were not suitable for the project. Defendant's Exhibit No's. 8, 9, 10.

7. The evidence establishes that Cinducoll counterfeited Holophane's products and misappropriated its tradename. Genica introduced a January 17, 1984 telex from Carlos Alvarez of Holophane-Mexico to Morrison-Knudsen that described Cinducoll as its licensee and recommended the use of certain lighting equipment. The evidence establishes that Holophane's Mexican subsidiary did not send this telex. Both Carlos Alvarez and Raul Meza denied sending this telex. Evidence suggested that the telex was not sent from Holophane-Mexico's telex machine. Testimony of Aage Emanuelsen. The 1985 letter from Raul Meza confirming that the January 17 telex had been sent and referring to Cinducoll as a licensee and to a Cinducoll brochure containing "Holophane" products

lacks credibility. Plaintiff's Exhibits No's. 5, 7, and 10, 11. The Cinducoll brochure is undated and may relate to the time prior to 1982 when all parties agree Cinducoll was a Holophane purchaser. Testimony of Gerald N. Carozza; Testimony of David Meredith. The 1985 letter from Raul Meza itself was written while Mr. Meza was suspended from Holophane-Mexico pending investigation that ultimately resulted in his termination. *Id.* The earlier "draft" version of this letter initially sent to Genica did not include the license language that was included in the second version of this letter that Genica submitted. Testimony of Gerald N. Carozza; Plaintiff's Exhibit No. 7; Defendant's Exhibit No. 35.

8. According to the deposition of Mr. Scot Anderson, Morrison-Knudsen purchased certain lighting fixtures from Cinducoll. Deposition of Scot Anderson at 3, 8. His testimony did not establish that Holophane manufactured or sold the lighting fixtures or supplied Holophane components. *Id.* at 10. The Agreement did not cover sales by Cinducoll, and Genica thus was not entitled to a commission on the sale.

9. According to Mr. Anderson's deposition, Morrison-Knudsen returned the fixtures purchased as defective and cancelled all other purchase orders. Deposition of Scot Anderson at 6, 10–11. Genica was not entitled to commissions for returned merchandise under the Agreement, only to credits against replacement merchandise shipments. Testimony of David Meredith; Plaintiff's Exhibit No. 1 at ¶ 9(c). Since there was no evidence that Morrison-Knudsen purchased replacement fixtures from Holophane or Cinducoll, even if the initial sale was included under the Agreement, Genica would not be entitled to a commission for returned goods.

10. In or about April, 1985, Holophane, for business reasons related to a decline of sales in the territory, gave Genica a six-month termination notice as required under the Agreement. Testimony of David Meredith; Plaintiff's Exhibit No. 1 at ¶ 13(a); Defendant's Exhibit No. 40. As of Novem-

ber 1, 1985 Genica's contract with Holophane was terminated as of November 1, 1985. Plaintiff's Exhibit No. 12.

11. Holophane took reasonable steps to determine whether Genica was entitled to commissions on shipments into the territory from 1980 to 1985. Defendant's Exhibit No. 40. In late 1984, in response to information from Genica that Holophane-Mexico was exporting products into Latin America, Holophane management in Denver asked Holophane-Mexico for an accounting of all such sales. Testimony of Gerald N. Carozza; Plaintiff's Exhibit No. 8; Testimony of David Meredith. Holophane-Mexico reported $34,806 worth of sales to Cinducoll in 1984. Defendant's Exhibit No. 7. Holophane-USA promptly paid Genica commissions of $4,698.81 on these sales, using the 13.5% commission rate. Testimony of David Meredith; Plaintiff's Exhibit No. 8; Defendant's Exhibit No. 7.

12. In 1986, Aage Emanuelsen, the new President of Holophane-Mexico, conducted review of Holophane-Mexico's records including an invoice-by-invoice search for all export sales. Testimony of Aage Emanuelsen. Holophane-Mexico's auditors, a branch of the accounting firm of Coopers & Lybrand, discovered five such invoices for the years 1980 through 1985, including the invoices for the $34,806 worth of sales previously discussed, a freight bill for which commissions are not paid, and one 1982 sale into El Salvador in the amount of $8,098.98. Testimony of Aage Emanuelsen; Testimony of David Meredith; Defendant's Exhibits Nos. 26, 32, 37, 38.

13. The search conducted by Holophane-USA included a review, by computer, of all sales into Latin America by destination and customer and a cross-check of those records against the commisisons paid to Genica. Holophane-Canada and Holophane-England also produced invoices of their sales into Latin America. Testimony of David Meredith; Testimony of Elsie Madsen; Defendant's Exhibit No. 40. This review produced only two instances where Genica had not been paid commissions—a sale from Holphane-USA in the amount of $12,036 and a sale from Holophane-Canada in the amount of $2,589.18 (American dollars). Testimony of Elsie Madsen. Defendant's Exhibits No's. 36, 39. Based on this evidence, the total amount of commissions due Genica is $1,923.22. Testimony of Elsie Madsen. Since each of these sales was made directly from Holophane to the purchaser, they are not sales in which Genica was entitled to a mark-up. Defendant's Exhibits No's. 36, 37, 39.

14. Plaintiff had access to all relevant data through discovery. I twice extended the original period set for discovery. Plaintiff did not request or move for any additional discovery.

15. I credit the testimony of David Meredith and Elsie Madsen as to the throughness of the searches and of Aage Emanuelsen that defendant's Mexican subsidiary did not make unaccounted sales to Genica's territory from 1980 to 1985.

16. On January 2, 1987, default judgment was entered for Holophane against Genica on Holophane's counterclaim in the amount of $29,757.56.

*Conclusions of Law*

■ 1. To recover for breach of contract—here, the alleged unpaid commissions, Genica has the burden of proving all essential elements of the cause of action, including proof of damages. To satisfy this burden, Genica must provide sufficient evidence that allows the Court to determine the damage amount with reasonable certainty. *William B. Tanner Co. v. WIOU, Inc.*, 528 F.2d 262 (3d Cir.1975).

■ 2. The only evidence of any commissions due Genica was the $1,923.23 on sales identified by defendant Holophane. Genica has not put on any evidence of any specific sale that would enable this Court to calculate the amount of commisisons due Genica. Accordingly, as a matter of law, Genica has not satisfied its burden of proof on its breach of contract action against Holophane and is therefore not entitled to any commissions in excess of $1,923.23.

■ 3. An accounting should not be used to aide a party who has otherwise

failed to satisfy his burden of proof on the damages issue. *See Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co.,* 607 F.Supp. 361 (E.D.Pa.1985); *Keystone Floor Products Co. v. Beattie Mfg. Co.,* 432 F.Supp. 869 (E.D.Pa.1977). Where there is an adequate remedy at law, an accounting—an equitable remedy—is not available as a substitute for damages. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962). Nor is an accounting in such a case available for Genica to obtain the sales information from Holophane that Genica has had, through discovery, opportunity to obtain. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1010–11 (7th Cir.1985) (no accounting where no showing why claims for money were not damages and plaintiff had full access to defendant's business records to discover amount of compensation). There is thus no need for a further accounting.

## JUDGMENT

AND NOW, this 30th day of Jan, 1987, upon consideration of the foregoing Findings of Fact and Conclusions of Law, it is hereby ORDERED that:

1. Judgment is entered for Genica against Holophane on Genica's Complaint in the amount of $1,923.22.

2. Judgment is entered for Holophane against Genica on Holophane's Counterclaim in the amount of $29,757.56.

3. The parties are to bear their own costs of this proceeding.