**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2058
_____

DEBORAH MIECZKOWSKI,
                              Appellant

v.

YORK CITY SCHOOL DISTRICT;
DELORIS PENN; TRESA DIGGS
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1:07-cv-01102)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
January 14, 2011

Before:  SCIRICA, BARRY and VANASKIE, *Circuit Judges*

(Filed: February 18, 2011)

_____

OPINION
_____

VANASKIE, *Circuit Judge*

In this reverse race discrimination and First Amendment retaliation case arising in the public employment context, Plaintiff Deborah Mieczkowski appeals the District Court's grant of summary judgment in favor of York City School District ("School District"), Tresa Diggs, and Deloris Penn. For the reasons that follow, we will affirm.

I.

We write only for the parties and assume their familiarity with the factual and procedural history of this case. Mieczkowski was employed by the School District from February 2004 until June 22, 2007. In July 2006, she became assistant superintendent of the School District. Mieczkowski, a Caucasian, brought this action against the School District, Tresa Diggs (the School District's superintendent), and Deloris Penn (the School District's director of human resources), asserting race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981, equal protection and retaliation claims under 42 U.S.C § 1983, and civil conspiracy under Pennsylvania law.[1]

Mieczkowski made a number of allegations in support of her claim of race discrimination that she maintains on appeal, including that: (1) in December 2005, Mieczkowski attempted to discipline an African American principal, but Diggs, who is African American, warned Mieczkowski not to impose discipline upon the principal

---

[1] Although Mieczkowski argues that in addition to discrimination, she had also asserted a hostile work environment claim, the District Court properly found that she failed to present such a claim in the Complaint.

because the school board president, who is also African American, "would not like it" (Compl. ¶ 23); (2) on October 11, 2006, at a meeting of the School District's board of directors, an African American board member made a comment to Penn, who is also African American, to the effect that Penn was disproportionately disciplining African American employees, and stated that "it's about time you went after some whites" (*id.* ¶¶ 25-26); (3) Mieczkowski was excluded from two executive sessions of the school board; (4) Mieczkowski was arbitrarily asked to cancel vacation days; (5) Mieczkowski was verbally reprimanded for arriving late to a meeting while other African American personnel who were consistently late for meetings were never reprimanded; and (6) as assistant superintendent, Mieczkowski was paid less than Diggs when Diggs was assistant superintendent, and was also paid less than subordinate African American employees.

In addition to the above allegations, Mieczkowski relies on the events immediately preceding her departure from the School District. On November 29, 2006, Diggs requested a meeting with Mieczkowski, which was attended by Penn. At the meeting, Diggs attempted to give Mieczkowski a letter addressing Mieczkowski's failure to ensure the timely submission of the Alternative Education Report and the Educational Assistance Program ("EAP") Report to the Pennsylvania Department of Education. Diggs wrote that the "letter [was] to remind [Mieczkowski] of the importance of following through with the requirements of submitting necessary reports for [her] area of responsibility." (A. 167o.) Diggs informed Mieczkowski that the Department of Education had informed the School District that if the EAP Report was not completed by

3

November 22, 2006, the School District would not receive $800,000 in funding, and if the Alternative Education Report was not submitted, the School District would not receive $2 million. Diggs stated that Mieczkowski's "failure to submit these reports in a timely manner jeopardized $2.8 million in future district funds," and that it was her "expectation that this situation will never occur again." (*Id.*) Mieczkowski refused to accept Diggs's letter, informed Diggs that she could give the letter to Mieczkowski's secretary, stated that she wanted legal representation, and then left the room. Mieczkowski testified that neither Diggs nor Penn objected to her request to have counsel present.

On or about December 1, 2006, Diggs sent Mieczkowski a letter requesting another meeting. Although that second letter is not in the record, Mieczkowski testified that in the letter Diggs accused her of insubordination for refusing the first letter and requesting legal representation. Diggs testified that her accusation of insubordination only related to Mieczkowski's refusal to accept the letter and the allegedly disrespectful manner in which Mieczkowski refused the letter by shoving the letter back at Diggs.

In December, there was a second meeting, attended by Mieczkowski, Mieczkowski's attorney, Diggs, Penn, and the School District's attorney. At the meeting, the parties discussed the contents of Diggs's November 29 letter to Mieczkowski. Although both letters from Diggs were placed in Mieczkowski's personnel file, the record does not indicate that the School District took any formal action against Mieczkowski, nor that the School District ever considered either terminating or disciplining her.

4

Mieczkowski claims that as a result of these events, she suffered emotional distress, anxiety, insomnia and elevated blood pressure, and did not return to work after December 1, 2006. On June 22, 2007, after exhausting accumulated leave time, Mieczkowski took a disability retirement.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367(a), and 42 U.S.C. § 2000e-5(f)(3). We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment, and apply the same standard as the District Court in determining whether summary judgment was appropriate. *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Under that standard, summary judgment is warranted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making this determination, we must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Stratechuk v. Bd. of Educ., South Orange-Maplewood Sch. Dist.*, 587 F.3d 597, 603 (3d Cir. 2009) (internal quotation marks omitted).

## III.

In the absence of direct evidence of discrimination, a plaintiff may prove discrimination under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff bears the initial burden of establishing a prima facie case of discrimination. In *McDonnell Douglas*, the Supreme Court held that a plaintiff may establish a prima facie case of race

5

discrimination by showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 802. The Court noted that "[t]he facts necessarily will vary in Title VII cases," and that its "specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *Id.* at 802 n.13. The test may also be articulated in more generally applicable terms:

> [T]he plaintiff must first establish a prima facie case of discrimination by showing that: (1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.

*Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

In *Iadimarco v. Runyon*, 190 F.3d 151 (3d Cir. 1999), we recognized that because the first prong of the *McDonnell Douglas* test "requires plaintiff to establish his or her identity as a member of a minority group, the literal application of the test would preclude its use by White plaintiffs alleging 'reverse discrimination.'" *Id.* at 158. Consequently, we held that "all that should be required to establish a prima facie case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Id.* at 161.

6

If a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 157. If the employer offers evidence of a legitimate, non-discriminatory reason for its adverse action, to defeat summary judgment "the plaintiff must point to *some evidence*, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 166 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)) (internal quotation marks omitted).

Even under the modified prima facie standard in reverse discrimination cases, a plaintiff must establish that she suffered an adverse employment action. *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000). We have defined an "adverse employment action" as an action by an employer that is "'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).

After carefully analyzing every alleged discriminatory incident and circumstance, the District Court concluded that Mieczkowski had failed to establish that she had suffered any adverse employment action, and that even assuming any of the incidents amounted to an actionable adverse employment action, she had failed to show that she was being treated less favorably than others on account of her race. Accordingly, the

7

District Court concluded that Mieczkowski had failed to establish a prima facie case of race discrimination under Title VII and § 1981.[2]

Mieczkowski concedes that while employed with the School District she did not suffer a reduction in pay or benefits, a demotion, the loss of a promotion, or a termination. She argues, however, that her alleged constructive discharge, the fact that she was "hired at a disparately diminished rate of pay," and the two letters of reprimand constitute discrete adverse employment actions. (Appellant's Br. at 37.) We find Mieczkowski's contentions to be without merit.

Certainly, a constructive discharge, if it occurred, constitutes an adverse employment action. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 247 n.32 (3d Cir. 2006). Contrary to Mieczkowski's assertion, however, the District Court did address her constructive discharge claim. The District Court specifically found that "the evidence of record fails to support her allegation that she was constructively discharged by any action or actions that Defendants took during the time Plaintiff worked in the School District." *Mieczkowski v. York City Sch. Dist.*, No. 1:07-cv-1102, 2009 WL 6093594, at *6 (M.D. Pa. Dec. 21, 2009).

To establish a constructive discharge, Mieczkowski was required to show that "'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996) (quoting *Goss v. Exxon Office*

_____

[2] "In the Third Circuit, the elements of employment discrimination under Title VII are identical to the elements of a section 1981 claim." *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999) (internal quotation marks omitted).

*Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984)). Notwithstanding the medical reasons Mieczkowski cites for her departure from the School District, we are unable to conclude that any of the alleged discriminatory incidents and circumstances, alone or taken together, would compel a reasonable person in Mieczkowski's position to resign. In this regard, Mieczkowski was aware of pay differentials and never formally complained about that matter prior to December 1, 2006. Moreover, the letters of reprimand, only one of which is before us, are not such as to cause a reasonable person to conclude that resignation was required to avoid intolerable working conditions. Nor do the other matters raised in Mieczkowski's Complaint, singularly or in combination, rise to the level of intolerable working conditions. Consequently, the District Court correctly concluded as a matter of law that Mieczkowski was not subject to a constructive discharge when she stopped coming to work after December 1, 2006.

Mieczkowski also argues that a discriminatory salary disparity between her and her African American co-workers establishes an adverse employment action.[3] She contends that, as assistant superintendent, she was paid less than Diggs when Diggs was assistant superintendent, and that she was paid less than certain subordinate African American employees. While an unwarranted salary disparity can constitute an adverse employment action, *see Stanziale*, 200 F.3d at 105-06, we agree with the District Court that Mieczkowski failed to present evidence supporting an inference that any differential in this case was not warranted.

---

[3] Notably, Mieczkowski states that she is not presenting an equal pay claim, but is instead pointing to salary differentials as evidence of disparate treatment. (Appellant's Br. at 36.)

9

Initially, we find it noteworthy that while negotiating her compensation for the assistant superintendent position, Mieczkowski had reviewed the salary information for Diggs and other School District employees, and, consequently, when executing her contract, was entirely cognizant of the pay disparities she now alleges were discriminatory. More significantly, however, Mieczkowski failed to present any evidence – beyond the mere fact that she earned less than her African American predecessor and certain subordinate African American employees – from which a reasonable trier of fact could find that the salary disparities were the result of race discrimination. Indeed, as the District Court found, "the evidence shows that the School District's salaries and pay increases were tied to numerous factors such [as] seniority, professional certifications, and changes in salary structure dictated by budgetary concerns." *Mieczkowski*, 2009 WL 6093594, at *9. Thus, even assuming Mieczkowski established a prima facie case of race discrimination on the basis of the cited salary disparities, she has failed to present any evidence to rebut the wholly legitimate and non-discriminatory factors that may justify her earning less than either her predecessor or subordinates. In other words, Mieczkowski failed to show that she was similarly situated to her alleged comparators. *See Stanziale*, 200 F.3d at 107. Accordingly, we find that the District Court properly determined that Mieczkowski failed to present evidence showing that any salary disparity constituted an adverse employment action.

Finally, Mieczkowski argues that the two letters of reprimand she received in November and December 2006 immediately preceding her departure from the School District were adverse employment actions. In *Weston v. Pennsylvania*, 251 F.3d 420 (3d

Cir. 2001), we rejected the district court's presumption that written reprimands adversely affected the terms and conditions of employment, holding that the burden is on the plaintiff "to establish how these two [written] reprimands effect[ed] a material change in the terms or conditions of his employment." *Id.* at 431. In other words, reprimands that do not "effect a material change in the terms or conditions of . . . employment" cannot be considered adverse employment actions. *Id.* In determining in *Weston* that the two written reprimands did not qualify as adverse employment actions, we observed that the plaintiff "was not demoted in title, did not have his work schedule changed, was not reassigned to a different position or location in the [workplace], did not have his hours or work changed or altered in any way, and that he was not denied any pay raise or promotion as a result of these reprimands." *Id.* We further noted the fact that the reprimands were placed in the plaintiff's personnel file for a period of six months, and were thus "of a temporary nature," and "were not permanently affixed to [the plaintiff's] file." *Id.*

To distinguish *Weston*, Mieczkowski relies on the fact that in her case the letters of reprimand were permanently placed in her personnel file. We do not think this distinction is sufficient to establish that her letters of reprimand were adverse employment actions. *Weston* rejected a presumption that written letters of reprimand caused a material change in the terms or conditions of the plaintiff's employment. *Id.* *Weston* makes clear that in order to constitute an adverse employment action, the letters had to have effected a material change in the terms or conditions of Mieczkowski's employment. Beyond alleging that the letters of reprimand were unjustly issued and

11

placed in her permanent personnel file, Mieczkowski has not demonstrated how the letters materially changed her employment status. In the absence of such evidence, and in light of the fact that the letters neither warned of future disciplinary action nor termination, we find that Mieczkowski failed to demonstrate that the letters constituted adverse employment actions.[4]

Moreover, we agree with the District Court that even if the two letters of reprimand constituted adverse employment actions, Mieczkowski has not presented evidence to show that the letters were the result of discriminatory animus. In support of her claim that the November 29 letter of reprimand raises an inference of discrimination, Mieczkowski argues that the reprimand was unjust. Mieczkowski specifically argues that she was not at fault for the late submission of the reports because a portion of one of the late reports had to be completed by an outside contractor, and the contractor had failed to complete its portion of the report on time. She also points to a November 30, 2006 email from the Department of Education to Mieczkowski which states that although the funding connected to the Alternative Education Report had been "held" pending the report's submission, "[a]t no time was York City School District in jeopardy of losing the funds." (A. 290.) Mieczkowski therefore argues that a reasonable jury could find that Diggs "knew that [Mieczkowski] was not responsible for the delay" and conclude that any discipline was "contrived" and discriminatory. (Appellant's Br. at 31-32.)

---

[4] It is noteworthy that Mieczkowski never returned to work after the second reprimand was issued and eventually took a disability retirement. Thus, the inclusion of the letters in her personnel file could not have adversely affected her advancement, pay increases, or other employment prospects.

12

Mieczkowski seems to miss the point in her repeated insistence that she was not at fault – the record establishes that as assistant superintendent it was her responsibility to submit the reports, regardless of any circumstances affecting her ability to discharge that responsibility. Moreover, the November 30 email from the Department of Education does not establish that on November 29 Diggs was aware that the School District's funding was not in jeopardy. Indeed, Diggs received an email on November 19 from the Department of Education informing her that the department was "still holding the 06/07 Alt Ed Demo Grant ($2M) until York City has submitted the 2005/2006 Alt Ed End of Year Report" and asking that Diggs "rectify this issue URGENTLY." (A. 262.) Consequently, we cannot say that the reprimand following the late submission of the reports was so "unjust," or that the concern that the failure to timely submit the reports jeopardized funding was so unfounded, that the reprimand raises an inference of discrimination.

Mieczkowski emphasizes that at a school board meeting approximately two months prior to the first letter of reprimand, an African American member of the School District's board of directors made a comment to Penn to the effect that Penn, as director of human resources, was disproportionately disciplining African Americans and told her that "it's about time you went after some whites." (Compl. ¶ 26.) Mieczkowski asserts that "[t]hereafter, Penn pursued Plaintiff . . . as a way to satisfy the District's desire to go after whites." (Appellant's Br. at 8.)

"We have generally held that comments by those individuals outside of the decisionmaking chain are stray remarks, which, standing alone, are inadequate to support

13

an inference of discrimination." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 521 (3d Cir. 1997). There is nothing in the record to suggest that either the board member who told Penn to go "after whites" or Penn had any involvement in the decision to reprimand Mieczkowski, or that Diggs was motivated by the board member's comment in her decision to reprimand Mieczkowski. Accordingly, we find that the District Court correctly concluded that even if the letters of reprimand constituted adverse employment actions, Mieczkowski failed to show that Diggs treated Mieczkowski less favorably than other employees based on her race.

In sum, we find that the District Court correctly concluded that Mieczkowski failed to show that she suffered an adverse employment action. We also agree that even if Mieczkowski successfully alleged an adverse employment action, none of the alleged incidents or circumstances raise any inference of discrimination. We will therefore affirm the grant of summary judgment in favor of Appellees on the Title VII and § 1981 discrimination claims. Furthermore, because the lack of evidence to support her discrimination claims is also fatal to her § 1983 equal protection claim, we will also affirm the grant of summary judgment on that claim. *See Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009) ("To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." (internal quotation marks omitted)).

## IV.

"To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected

14

activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir.2009). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).

Mieczkowski contends that she was accused of insubordination as a result of her request for counsel.[5] Even assuming, as the District Court did, that Mieczkowski's request for counsel was constitutionally protected speech, we are unable to conclude that Mieczkowski presented sufficient evidence of a retaliatory action that would be sufficient to constitute actionable conduct.

---

[5] Mieczkowski's Complaint alleged that "[o]n or around December 1, 2006, Defendant Diggs issued a second written discipline letter from the defendant York County School District alleging insubordination because the Plaintiff requested to secure legal advice in dealing with the first discipline letter. This misconduct violated plaintiff's 1st Amendment rights." (Compl. ¶ 32.) In her brief in opposition to the motion for summary judgment, she also characterized the protected activity as "speech, i.e., requesting time to consult a lawyer." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. at 17.) In her appellate brief, Mieczkowski submits that "the issue of requesting a lawyer does not capture the full nature of plaintiff's protected activities." (Appellant's Br. at 42.) She argues that "[w]hile [she] did not file a formal complaint of discrimination, there is evidence that she questioned and complained to Diggs, Penn, and others about the treatment to which she was being subjected, and such complaints or reports of mistreatment are inherently matters of public concern, which are protected by the First Amendment." (Id. at 44.) Because she never argued in the District Court that she was retaliated against for such activities, the argument is waived. See *United States v. Lockett*, 406 F.3d 207, 212 (3d Cir. 2005). In any event, because Mieczkowski failed to satisfy the adverse action and causation elements of a retaliation claim, the question of what constitutes First Amendment-protected conduct is academic.

15

The second letter of reprimand that Mieczkowski claims constitutes actionable retaliatory conduct is not in the record, and we are therefore unable to review whether its language could support Mieczkowski's claim. As we found above, our holding in *Weston* makes clear that the written reprimand did not constitute an adverse employment action. 251 F.3d at 431. Although a letter that does not rise to the level of an adverse employment action may nonetheless support a prima facie case of First Amendment retaliation, *see Suppan*, 203 F.3d at 234, it will only do so if it is sufficient to deter a person of ordinary firmness from exercising free speech rights, *McKee*, 436 F.3d at 170. Mieczkowski has not shown that the second letter she received would have any such effect.

Mieczkowski's own representations indicate that the letter was prompted by her refusal to accept the November 29 letter of reprimand. Mieczkowski does not dispute the fact that she refused to take the November 29 letter. Receipt of a follow-up letter accusing an employee of insubordination under these circumstances would not deter a reasonable person from requesting counsel.

Furthermore, beyond Mieczkowski's own allegation, there is nothing in the record suggesting a causal connection between the request for counsel and the written reprimand. As Mieczkowski testified, Diggs and Penn never objected to the request, and a second meeting was eventually held at which both parties were represented by counsel. Consequently, we find that the District Court correctly determined that Mieczkowski failed to present sufficient evidence that her request for counsel was a substantial factor

16

in Diggs's subsequent charge of insubordination, and we will therefore affirm the grant of summary judgment on the First Amendment retaliation claim.

V.

There is no liability for civil conspiracy where there is no liability for the act or acts underlying the conspiracy. *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000). Because we find that the District Court properly entered summary judgment against Mieczkowski on her civil rights claims, we will also affirm the grant of summary judgment on her civil conspiracy claim under Pennsylvania law.

VI.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Appellees.