**SHARLENE ISAAC, Plaintiff,**

**v.**

**RHONDA CRICHLOW, REYNOLD CRICHLOW, THE ADMINISTRATOR OF THE ESTATE OF HENRY CRICHLOW, THE ESTATE OF HENRY CRICHLOW, and JOHN OR JANE DOE, Defendants**

Civil No. SX-12-CV-065

Superior Court of the Virgin Islands

Division of St. Croix

February 10, 2015

38

39

40

44

SHARI N. D'ANDRADE, ESQ., Kellerhals, Ferguson, PLLC, St. Thomas, USVI, *Attorney for Plaintiff.*

LYDIA L. MOOLENAAR, ESQ., Law Office of Lydia Moolenaar, Christiansted, St. Croix, USVI, *Attorney for Defendants.*

MOLLOY, *Judge of the Superior Court*

## MEMORANDUM OPINION

### (February 10, 2015)

**THIS MATTER** comes before the Court on Plaintiffs Motion for Summary Judgment filed on February 14, 2013.[1] Also before the Court are Rhonda and Reynold Crichlow's ("Defendants") Motion to Dismiss pursuant to Federal Rule of the Civil Procedure 12(b)(6) filed on August 13, 2013.[2] The Court held a hearing on the above-mentioned motions on July 2, 2014. For the reasons stated below, the Court will grant in part, and deny in part, Plaintiff's motion for summary judgment. The Court will also deny Defendants' motion to dismiss in its entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Because this opinion is principally for the parties who are familiar with the factual context, the Court will set forth only those facts that are necessary to a disposition of the pending motions.

Plaintiff, Sharlene Isaac ("Isaac"), alleges that she is one of the four surviving heirs of the decedent, Henry Crichlow. PL's Statement of Facts ¶ 2. Henry Crichlow died intestate on February 19, 2007. *Id.* at ¶ 1. The surviving heirs include Rhonda Crichlow, Reynold Crichlow, Sharlene Isaac, and Joann Douglas. *Id.* at ¶ 2.

On March 16, 2007, Rhonda Crichlow filed a petition for settlement without administration with the Superior Court of the Virgin Islands, naming herself and Reynold Crichlow as the only heirs of Henry Crichlow's Estate. *Id.* at ¶ 10. The probate matter was assigned case number SX-07-PB-028. *Id.* at Ex. B. Reynold Crichlow filed a waiver of consent to the filing of the petition on the same date. *Id.* at Ex. F. On June 6, 2007, a final adjudication and decree of distribution was entered by the Superior Court determining that Rhonda Crichlow and Reynold Crichlow

---

[1] Defendants filed an opposition on March 12, 2013. Plaintiff filed a reply on March 22, 2013, and a supplemental motion for summary judgment on August 21, 2013.

[2] Plaintiff filed an opposition on September 11, 2013. Defendants did not file a reply.

[3] The Court notes that Defendants failed to respond to Plaintiffs statement of undisputed facts. "Failure to respond to a movant's statement of material facts, or a respondent's statement of additional facts, as provided by these Rules may result in a finding that the asserted facts are not disputed for the purposes of summary judgment" LRCi 56.1(d). Accordingly, Plaintiffs statement of facts is not in dispute and shall comprise the record in this matter.

were Henry Crichlow's only surviving heirs and the 100% owners of the decedent's home at Plot No. 282 Estate Clifton Hill, King Quarter (the "Property"). *Id.* at Ex. C. Isaac was aware that Defendants were settling Henry Crichlow's Estate but understood that Rhonda and Reynold Crichlow would keep her interests in mind. *Id.* at Ex. A.

On April 15, 2011, Isaac telephoned Rhonda Crichlow and inquired as to the status of the decedent's house and whether it was being rented. Rhonda Crichlow responded that "you've nothing to do with that, the house does not concern you." *Id.* at ¶ 6. Isaac then researched the status of Henry Crichlow's Estate and discovered that she had been omitted from the probate court proceeding and distribution of the Estate. *Id.* at ¶ 9. Isaac also determined that Defendants Reynold and Rhonda Crichlow sold the Property and retained the proceeds of the sale. Id. at ¶ 17.

Isaac filed the instant action on February 24, 2012, seeking to: (1) set aside the Decree of Distribution and Final Judgment in the probate proceeding for fraud (Count I); and alleging causes of action for (2) conversion (Count II); (3) misrepresentation (Count III); (4) breach of fiduciary duty (Count IV);[4] (5) civil conspiracy (Count V); (6) unjust enrichment (Count VI); and (7) an accounting (Count VII).[5] Defendants filed an answer on April 18, 2012. Isaac moved for summary judgment on February 14, 2013. Defendant filed a motion in opposition on March 12, 2013. Isaac filed a reply on March 22, 2013, and a supplemental motion for summary judgment on August 21, 2013.

Approximately six months after Isaac filed her motion for summary judgment, Defendants filed a motion to dismiss pursuant to Federal Rule

---

[4] During oral arguments, Isaac voluntarily withdrew Count IV of the complaint which alleged a cause of action for breach of fiduciary duty.

[5] In addition to naming Rhonda and Reynold Crichlow as defendants, Isaac filed this action against (1) the Administrator of the Estate of Henry Crichlow; (2) the Estate of Henry Crichlow; and (3) John or Jane Doe. The Court notes that Defendant Rhonda Crichlow filed a petition for settlement without administration on March 16, 2007, pursuant to 15 V.I.C. § 191. On June 6, 2007, the Family Division of the Superior Court issued a final adjudication and decree of distribution closing the probate proceedings. A court may not exercise jurisdiction over a settled probate estate. *See Montgomery v. Estate of Griffin,* 49 V.I. 255, 260 (V.I. Super. 2008). In addition, a final judgment may not be entered until an order substituting the true name of the fictitious defendant has been issued. SUPER. CT. R. 26. Therefore, the Court finds that the administrator of the estate of Heniy Crichlow and the Estate of Heniy Crichlow shall be dismissed from this case and hereinafter removed from the caption. Plaintiff shall submit the true name of defendant(s) John or Jane Doe on motion and with notice to Defendants prior to the issuance of a final judgment in this matter.

of Civil Procedure 12(b)(6) on August 13, 2013. Isaac filed an opposition on September 11, 2013. The Court held oral arguments on the parties' motions on July 2, 2014. The Court finds the parties' motions are ripe for disposition.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

Defendants filed an answer on April 18, 2012, and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on August 13, 2013. A motion to dismiss made after an answer is filed is a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). FED. R. CIV. P. 12(h)(2); *See Benjamin v. AIG Insurance Company of Puerto Rico*, 56 V.I. 558, 565 (V.I. 2012) (stating the Appellee's motion to dismiss filed pursuant to Rule 12(b)(6) was filed after its answer and therefore should have been treated by the Superior Court as a motion for judgment on the pleadings). When presented with a motion for judgment on the pleadings, it is at the Court's discretion whether to consider matters outside the pleadings. *See* FED. R. CIV. P. 12(d). Where matters outside the pleadings are considered and not excluded by the court, a motion for judgment on the pleadings must be treated as one for summary judgment. *Id.* Here, Defendants' motion to dismiss pursuant to Rule 12(b)(6) was filed after Defendants' answer and contains matters outside the pleadings. Specifically, Defendants have attached as Exhibit 5, a Uniform Settlement Statement, to support their contention that Isaac and Joann Douglas may only be owed an equitable share of $171,590.31 of the proceeds of the estate, rather than a share of the total sale proceeds in the amount of $225,000.00. Therefore, the Court will consider the matters outside the pleadings and treat Defendants' motion to dismiss as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### B. Motion for Summary Judgment Pursuant to Rule 56

Summary Judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "The mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. The moving party must support the motion by "identify[ing] those portions of the record that demonstrate the absence of a genuine issue of material fact." *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013). If the moving party does so, "the burden shifts to the non-moving party to present 'affirmative evidence' from which a jury might reasonably return a verdict in his favor." *Id.* All allegations of the non-moving party supported by proper proofs must be accepted by the Court as true for the purposes of deciding the motion. *Anderson*, 477 U.S. at 248.

The Court may not make credibility determinations or weigh evidence. *Id.* at 255. If the record thus construed could not lead the trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The Court must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party. *Joseph v. Daily News Publishing Co., Inc.*, 57 V.I. 566, 581 (V.I. 2012). The Court's role in deciding a motion for summary judgment is not to determine truth, but rather to determine whether a factual dispute exists that warrants a trial on the merits. *Williams v. United Corp.*, 50 V.I. 191, 195 (V.I. 2008). Where such a factual dispute exists, the Court must deny summary judgment.

## III. DISCUSSION

Isaac contends that she is entitled to summary judgment because Defendants conspired to deprive her of her right to an equitable share of her father's estate through fraud, misrepresentation, conversion, civil conspiracy, and unjust enrichment. Defendants claim that Isaac has made no showing that she is an heir of Henry Crichlow, that Isaac has not stated her fraud and misrepresentation claims with the particularity required by Federal Rule of Civil Procedure 9(b), and that the applicable statute of limitations have run on Isaac's claims.[6] Since Defendants' claims concern potentially dispositive issues, they will be discussed first.

---

[6] Defendants also contend that the total amount owed from the sale of the estate property includes the decedent's wife's portion of the estate that passed to her children, the Defendants. However, the Court finds that this argument is without merit because according to the affidavit submitted by Defendants, Joycelyn Crichlow predeceased Henry Crichlow. Aff. of Reynold Crichlow, If 4-5 ["Joycelyn Crichlow died without a will on December 17, 2006.

## A. Affirmative Defenses Asserted by Defendants

### 1. *Isaac is Entitled to Relief Pursuant to Title 15, Section 84(13) of the Virgin Islands Code.*

As a threshold matter, Defendants argue in their dismissal motion that Isaac's paternity is an essential element to her claims and that she has failed to establish that she is an heir of Heniy Crichlow to accord entitlement to a share of the proceeds from the sale of the Property. In her motion for summary judgment, Isaac maintains that Henry Crichlow publically acknowledged her as his daughter because Henry Crichlow signed Isaac's birth certificate, acknowledged her as his daughter in a letter, and was described as her father in an affidavit signed by Isaac's maternal grandmother. Thus, Isaac contends that paternity has been established to warrant her entitlement to an equitable interest in Henry Crichlow's estate.

In the Virgin Islands, an illegitimate child may inherit from a deceased parent where there are acts sufficient to constitute acknowledgment of paternity. *See* 15 V.I.C. § 84(13). Section 84(13) provides:

> The real property of a deceased person, male or female, not devised, shall descend, and the surplus of his or her personal property, after payment of debts and legacies, and if not bequeathed, shall be distributed to the surviving spouses, children, or next of kin or other persons, in manner following:

> (13) An illegitimate child shall be considered to have the same status, for the purpose of the descent and distribution of the property of his or her ancestors, as if he or she were born in lawful wedlock provided that in cases where the ancestor in question is a father, *he admitted of record paternity of such child by signing the official birth certificate*; or he was adjudged the father of such child by a court of competent jurisdiction; or by written acknowledgment he recognized such child as his.

15 V.I.C. § 84(13) (emphasis added).

---

Henry Crichlow died without a will on February 19, 2007."]. Therefore, her interest passed to Henry Crichlow upon her death and has no bearing on the amount that would be owed to Isaac for the proceeds of the sale of the estate property.

■ In this case, Isaac submitted the following three documents to prove that she is the daughter of Henry Crichlow and is entitled to an equitable interest in Henry Crichlow's estate: (1) a copy of her birth certificate issued by the Republic of Trinidad and Tobago dated March 23, 1976, and certified by the Registrar General of Trinidad and Tobago; (2) a letter purportedly written by Henry Crichlow dated November 20, 1992, in which Henry Crichlow acknowledges Isaac as his daughter; and (3) an affidavit signed by Isaac's maternal grandmother dated July 30, 1980, in which Henry Crichlow is described as Isaac's father. As to the birth certificate, Isaac submitted declarations from two individuals familiar with Henry Crichlow's handwriting swearing to its authenticity. Pl.'s Notice of Filing, Exs. A & B (Oct. 9, 2014). Under Federal Rule of Evidence 901(b)(2), a nonexpert's opinion that a handwriting is genuine, based on familiarity with it that was not acquired for the current litigation satisfies the requirement of authenticating an item of evidence. In addition, under Rule 902 of the Federal Rules of Evidence, certain documents are self-authenticating. Specifically, Rule 902(3) provides that foreign public documents that are executed or attested in an official capacity by a person who is authorized by the laws of a foreign country to do so are self-authenticating. In order to qualify as self-authenticating, "[t]he document must be accompanied by a final certification that certifies the genuineness of the signature and the official position of the signer or attester." *Id.* Here, the birth certificate was certified by Sheila Bishop, Registar General of Trinidad and Tobago and stamped with an official seal dated March 23, 1976. Pl.'s Supp. Summ. J. Mot., Ex. A (Aug 27, 2013). The birth certificate bears the signature of Henry Crichlow and identifies him as the father of Sharlene Isaac. While the birth certificate does contain a seal by Registrar Bishop, Isaac has failed to provide a final certification as to the genuineness of the registrar's signature pursuant to Rule 902(3). However, the Court may deem the birth certificate to be "presumptively authentic" if Defendants are given a reasonable opportunity to investigate the document's accuracy and authenticity. *See* FED. R. EVID. 902(3)(A) ("If all parties have been given a reasonable opportunity to investigate the document's authenticity and accuracy, the court may for good cause . . . order that it be treated as presumptively authentic without certification"). At the July 2, 2014 hearing, which was held more than seven months ago, the Court allowed Defendants an opportunity to submit evidence challenging the authenticity and accuracy

51

of Isaac's birth certificate. Defendants failed to present any evidence whatsoever over this seven month period. In light of the fact that the birth certificate bears the seal of the Registrar of the Republic of Trinidad and Tobago and the absence of any evidence challenging the authenticity and accuracy of the information contained on the birth certificate, the Court finds that the birth certificate is "presumptively authentic" and will be admitted into evidence to demonstrate that Henry Crichlow is Isaac's father.

 As to the letter purportedly written by Henry Crichlow and the affidavit by Isaac's maternal grandmother, the Court looks to the Virgin Islands statute governing acknowledgement of paternity to determine if the evidence is sufficient. Section 295 of Title 16 of the Virgin Islands Code provides:

> The deceased father of a child born out-of-wedlock, by having acknowledged the child as his own, or having received the child into his family and otherwise having treated it as if it were a legitimate child, thereby provides evidence of paternity.

16 V.I.C. § 295(a). Here, the letter purportedly written by Henry Crichlow in which he acknowledges Isaac as his daughter is an out of court statement offered for its truth and is therefore hearsay pursuant to Federal Rule of Evidence 801(c). However, Rule 804(b)(4) provides an exception to the hearsay rule for statements by an unavailable declarant regarding " . . . the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption, or marriage, or similar facts of personal or family history, even though the declarant had no way of acquiring personal knowledge about that fact. . ." In this matter, Henry Crichlow is an unavailable declarant due to his death. FED. R. EVID. R. 804(a)(4). Therefore, the Court finds that the letter is admissible evidence showing that Henry Crichlow acknowledged Isaac as his own child, a statement of his familial and blood relationship with Isaac. Conversely, the affidavit by Isaac's grandmother is not evidence of paternity because it does state that Henry Crichlow acknowledged Isaac as his daughter pursuant to 16 V.I.C. § 295. It is merely a statement by Isaac's grandmother that Henry Crichlow is Isaac's father. Nevertheless, the Court finds that the properly authenticated birth certificate and Henry Crichlow's November 20, 1992 letter both pro-

vide a sufficient showing that Isaac is an heir of Henry Crichlow entitling her to an equitable share of the proceeds of the sale of the estate property.[7]

## 2. *Isaac has Pled Fraud and Misrepresentation with the Particularity Required by Federal Rule of Civil Procedure 9(b).*

As an additional threshold matter, Defendants' argue that Isaac's pleadings of fraud, misrepresentation, and other deceptive conduct were not pled with the level of particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and thus Isaac has failed to state a claim upon which relief could be granted. Isaac states that she has sufficiently pled a claim that would entitle her to relief under Federal Rule of Civil Procedure 60(d).

■ Federal Rule of Civil Procedure 9(b) requires fraud and misrepresentation allegations to be stated with particularity. *Ringo v. Southland Gaming of U.S. Virgin Islands, Inc.*, 2010 V.I. LEXIS 62, *9 (V.I. Super. Sept. 22, 2010) (citing FED. R. CIV. P. 9(b)). Specifically, Rule 9(b) requires a plaintiff to plead: (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it be acted upon; and (5) that the plaintiff acted or relied upon it to his damage or detriment. *Olive v. deJongh*, 57 V.I. 24, 47 (V.I. Super. 2012) (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir. 1992)). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. FED. R. CIV. P. 9(b). Under Rule 9(b), plaintiffs are required to "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

■ Here, Isaac seeks to set aside the probate decree of distribution and final adjudication for fraud. The basis for Isaac's claim is generally stated in paragraph 21 of the complaint, which provides:

---

[7] In the statement of undisputed material facts, Isaac asserts that Joann Douglas is also an heir of Henry Crichlow. Pl.'s Statement of Facts, If 2. Therefore, Isaac's entitlement to the proceeds of the sale of the estate property would amount to one-fourth of the total amount of the proceeds.

Sharlene [Isaac] was lulled into thinking the probate of her father's Estate was being handled by her siblings and, therefore, had no knowledge that apparently Rhonda, and possibly Reynold and others provided false information to the court, to wit: that Rhonda and Reynold were Henry Crichlow's only surviving heirs.

Compl. ¶21.

The complaint also states that Defendants knowingly misrepresented to the Court that Rhonda and Reynold were the only surviving heirs to the Estate of Heniy Crichlow when they knew that Isaac and Joann Douglas were also living issues of Henry Crichlow. Compl. ¶ 38. Defendants also knowingly misrepresented to Isaac that they were handling Henry Crichlow's Estate on her behalf with the intention that she would rely on these statements. Compl. ¶ 37. As a result of Defendants' statements to her and failure to disclose the existence of additional heirs to the probate court, which had no knowledge of the existence of additional heirs, Isaac was deprived of her rights as an heir to the Estate of Henry Crichlow. Compl. ¶ 39. The Court finds that the complaint states the circumstances of the alleged fraud and misrepresentation, and that Isaac has sufficiently pled with particularity as required by Federal Rule of Civil Procedure 9(b). *See Olive*, 57 V.I. at 47 (*citing Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) ("Courts should apply Rule 9(b) with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.").

### 3. *Defendants have Waived the Statute of Limitations as an Affirmative Defense.*

As a final threshold matter, Defendants maintain that the statute of limitations has run on all of Isaac's claims. A defense of violation of the statute of limitations is an affirmative defense that must be pled or stated in a responsive pleading. *See* FED R. CIV. P. 8(c)(1). In addition, this affirmative defense "must be asserted in a party's responsive pleading at the earliest possible moment, and is waived if not pleaded." *See Harris v. Virgin Islands Housing Authority*, 27 V.I. 61, 64 (V.I. Terr. Ct. 1992). Defendants did not raise the statute of limitations defense in their answer nor in any other responsive pleading. In fact, the statute of limitations defense was raised for the first time in Defendants' motion to dismiss,

54

filed 482 days after the answer was filed. Isaac timely objected to Defendants' raising this defense in an untimely fashion. Therefore, the affirmative defense is deemed waived and the Court will consider each count of Isaac's complaint to determine whether a genuine dispute exists that could lead the trier of fact to find for the Defendants.

## B. Count I: Action to Set Aside the Final Probate Judgment

### 1. *The Court Lacks Jurisdiction to Set Aside the Probate Judgment*

In her motion for summary judgment, Isaac maintains that Defendants deliberately omitted her as an heir of Henry Crichlow in the petition for settlement without administration despite Defendants' knowledge of Isaac as their sibling for many years. Isaac therefore requests that the Court set aside the Decree of Distribution and Final Judgment and reopen the probate matter to render a new Decree of Distribution and Final Judgment or, alternatively, remand this count of the complaint to the Probate Court for purposes of readministering this matter. Compl. ¶ 30.

Prior to the establishment of the Magistrate Division of the Superior Court, all probate matters were adjudicated by the Family Division. Effective January 1, 2008, the Virgin Islands Legislature provided the Magistrate Division with original jurisdiction to hear probate matters before the court. 4 V.I.C. § 123(a). A review of Magistrate decisions may be obtained by filing a motion or petition for review with the Clerk of the Court within ten days after entry of the order sought to be reviewed and a copy served on the opposing party, or by the Court, acting *sua sponte*. SUPER. CT. R. 322.1(b). Review of Magistrate decisions in probate cases is exclusively assigned to the Family Court judge for consideration. *Id.* at (d).

Isaac has essentially requested that this Court act with appellate jurisdiction to either render a new Decree of Distribution and Final Judgment, or remand Count I of the complaint to the Magistrate Division for readministration. Although the original probate decree was adjudicated by the Family Division prior to the establishment of the Magistrate Division, it is clear that the Family Court judge is now exclusively assigned review of all Magistrate decisions in probate cases. *Id.* Since this case is not currently before a Family Court judge and involves as a party a probate estate in which administration is closed, this

Court lacks jurisdiction to set aside the decree of distribution entered by the probate court or remand the decree to the Magistrate Division. *See Palmer v. Reeves*, 120 Conn. 405, 409, 182 A. 138 (1935) (opining that where the superior court acts on appeal from probate, it is without jurisdiction unless conditions designated by statute are complied with); *see also Montgomery*, 49 V.I. at 260 (dismissing defendant because a court cannot exercise jurisdiction over a settled probate estate).

 Nevertheless, Isaac may alternatively seek, and this court may grant, equitable relief on the grounds that the probate judgment was obtained by fraud. *See United States v. Throckmorton*, 98 U.S. 61, 66, 25 L. Ed. 93 (1878) (stating that equitable relief by independent action ". . . has been granted on the ground that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to court."). Isaac argues that this Court has jurisdiction to set aside the decree of distribution under Federal Rule of Civil Procedure 60(d).

 Federal Rule of Civil Procedure 60(d) provides that:

> This rules does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; (2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or; (3) set aside a judgment for fraud on the court.

FED. R. CIV. P. 60(d). The current Rule 60(d) is derived from the "savings clause" of the former Rule 60(b). The Third Circuit Court of Appeals in *Herring v. United States*, 424 F.3d 384 (3d Cir. 2005), construed this language from the former Rule 60(b) to determine that a party may file an independent action alleging fraud upon the court. *Id.* at 389 ("It follows that an independent action alleging fraud upon the court is completely distinct from a motion under Rule 60(b).").

 In Isaac's motion for summary judgment, she purports to make a claim for fraud arising under Rule 60(d)(3). In addition, Isaac's opposition to Defendants' motion to dismiss states that she is proceeding on Count I of the complaint under Rules 60(d)(1) and (3), based on Defendants' fraud against her and upon the Court. Despite Isaac's characterizations of her cause of action, the Court disagrees that Rule 60(d) provides a separate cause of action. The provisions of the Federal

Rules of Civil Procedure do not constitute causes of action in the Virgin Islands. These rules are designed to provide the processes and procedures for the orderly and efficient administration of cases pending before the Court. *See* FED. R. CIV. P. 1 ("These Rules govern the procedure in all civil actions and proceedings . . ."). Nevertheless, the Court will construe Count I of the complaint as an independent action for fraud upon the court based on the common law.[8] *See Montgomery*, 49 V.I. at 262 (finding that despite plaintiffs characterization of her cause of action as arising under Rule 60(b)(3), the court determined that plaintiff was proceeding on an independent action permitted by Rule 60(d)(1)). The Court will now discuss Isaac's independent actions for fraud upon the court.

### 2. *Isaac's Independent Action for Fraud Upon the Court Presents a Genuine Dispute as to Material Facts.*

An independent action for fraud on the court should be available only to "prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47, 118 S. Ct. 1862, 141 L. Ed. 2d 32 (1998). Such claims of fraud upon the court are not governed by a limitation period but must be commenced within a "reasonable time of the discovery of the fraud." *Apotex Corp. v. Merck & Co., Inc.*, 507 F.3d 1357, 1361 (Fed. Cir. 2007). In order to prove fraud on the court, a party must show: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court," by clear and convincing evidence. *Herring v. United States*, 424 F.3d at 390. This is a "demanding standard", reserved for "egregious misconduct", perpetrated by an "officer of the court." *Id.* The types of misconduct which constitute fraud on the court include bribery of jurors or a judge, or fabrication of evidence by attorneys, but do not include perjury by a witness. *Id.* Additionally, "[m]ere nondisclosure of evidence is typically not enough to constitute fraud on the court. . ." *United States v. Estate of Stonehill*, 660 F.3d 415, 444 (9th Cir. 2011).

---

[8] The Court notes that Isaac's allegations and evidence submitted in support of her claim that fraud was committed against her are nearly identical to those provided in support of her claim for misrepresentation, for which Isaac cites the elements for fraudulent misrepresentation under RESTATEMENT (SECOND) OF TORTS § 525. For the foregoing reason, the Court will address Isaac's claim that fraud was committed against and her claim for misrepresentation by Defendants as a single action for fraudulent misrepresentation. *See Greenberg v. Tomlin*, 816 F. Supp. 1039,1054 (E.D. Pa. 1993) ("It is generally recognized . . . that the elements of fraud and fraudulent misrepresentation are essentially identical.")

■ Isaac contends that Defendants Rhonda and Reynold Crichlow intentionally deceived the court in order to take full possession of Henry Crichlow's Estate and deprive Isaac of her right to assert her status as an heir of the decedent. Specifically, Isaac argues that Defendant Rhonda Crichlow filed a petition for settlement without administration excluding Isaac and Joann Douglas as heirs of Henry Crichlow. Pl.'s Statement of Facts ¶ 10. Additionally, in Isaac's motion for summary judgment, she states that Defendants' counsel has known her for many years. Pl.'s Summ. J. Mot., 6. Exhibit E to Isaac's motion is email correspondence between Defendants' counsel and Isaac in which Defendants' counsel refers to Reynold and Rhonda Crichlow as Isaac's siblings. Pl.'s Summ. J. Mot., Ex. E. Isaac also states that "Defendants' counsel, who knows Isaac as Henry Crichlow's daughter, knowingly filed false documents with the Court." Pl.'s Opp. to Defs.' Mot. To Dismiss, 15-16. However, viewing the evidence in a light most favorable to Defendants, Isaac's allegations can be construed as nothing more than Defendants' counsel's nondisclosure to the Court of Isaac's rights as an heir of Henry Crichlow. As noted above, nondisclosure of evidence is typically not enough to constitute fraud upon the court. *Estate of Stonehill*, 660 F.3d at 444. Moreover, Defendants are not officers of the Court and no claim was filed by Isaac against Defendants' counsel. Therefore, to the extent Isaac asserts a claim based on fraud on the Court, the Court will deny Isaac's request for summary judgment.

## C. Count II: Conversion

■ Count II of the Complaint seeks damages for Defendants' alleged conversion of Henry Crichlow's Estate, to which Isaac contends she has a legal right. In the Virgin Islands, common law conversion has been traditionally defined by the Restatements. *See Chase Manhattan Bank, N.A. v. Power Products, Inc.* 27 V.I. 126 (V.I. Terr. Ct. 1992). In *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), the Supreme Court of the Virgin Islands held that, while the Restatements may be persuasive authority in determining the common law, they "no longer constitute binding legal authority in this jurisdiction" pursuant to 1 V.I.C. § 4. *Id.* at 984. As such, when considering the application of the Restatements in the absence of local law to the contrary or binding precedent on the particular matter, the Superior Court must conduct a "*Banks* analysis" to determine the applicable common law. A *Banks*

58

analysis consists of a balancing of the following three non-dispositive factors: (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands. *Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 680-81 (V.I. 2012)). No local statute addresses conversion. It further appears that the Supreme Court of the Virgin Islands has yet to adopt a rule that reflects the common law regarding conversion.

 Applying a *Banks* analysis, the Court finds that RESTATEMENT (SECOND) OF TORTS § 222A reflects the common law of this jurisdiction. The Restatement defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." RESTATEMENT (SECOND) OF TORTS § 222A. First, this section has been cited by several courts in this jurisdiction, including the Supreme Court of the Virgin Islands. *See e.g., Ross v. Hodge*, 58 V.I. 292, 308 (V.I. 2013); *see also Watts v. Blake-Coleman*, 2013 U.S. Dist. LEXIS 90937 (D.V.I. June 28, 2013); *Airlines Reporting Corp. v. Belfon*, 2010 U.S. Dist. LEXIS 97349 (D.V.I. Sept. 16, 2010); *Addie v. Kjaer*, 51 V.I. 836, 849 n. 9 (D.V.I. 2009); *Creative Minds, LLC v. Reef Broadcasting, Inc.*, 2012 V.I. LEXIS 44 (V.I. Super. Sept. 6, 2012); *Olive v. de Jongh*, 57 V.I. 24, 48 (V.I. Super. 2012); *Chase Manhattan Bank, N.A. v. Power Products, Inc.*, 27 V.I. 126, 128 (V.I. Terr. 1992). This Restatement has been applied by Virgin Islands courts for at least twenty-three years. Second, a review of the case citations listed in the RESTATEMENT (SECOND) OF TORTS § 222A indicates that at least forty-five states have a rule derived from, or similar to, the rule established in RESTATEMENT (SECOND) OF TORTS § 222A. *See* RESTATEMENT (SECOND) OF TORTS § 222A — (Cases Adopting Common Law Principles of Conversion by Jurisdiction).[9] Finally, considering the longstanding application of the RESTATEMENT (SECOND) OF TORTS

---

[9] *Medison America, Inc. v. Preferred Medical Systems, LLC*, 357 Fed. Appx. 656, 663 (6th Cir. 2009); *Stuart & Sons, L.P. v. Curtis Pub. Co.*, Inc., 456 F. Supp. 2d 336, 343-44 (D. Conn. 2006); *Neurocare Institute of Central Florida, P.A. v. Healthtap, Inc.*, 8 F. Supp. 3d 1362, 1368 (M.D. Fla. 2014); *Newcomb v. Cambridge Home Loans, Inc.*, 861 F. Supp. 2d 1153, 1164 (D. Haw. 2012); *Christensen v. Quinn*, 45 F. Supp. 3d 1043, 1097 (D.S.D. Sept 10, 2014); *Wing v. Schaub*, 2011 Alas. LEXIS 70, *27 (Alaska July 27,2011); *Sports Imaging of*

§ 222A in this jurisdiction and the apparent widespread application of this rule in a majority of jurisdictions, the Court finds that the RESTATEMENT (SECOND) OF TORTS § 222A represents the soundest rule for the Virgin Islands, and is in accord with local public policy.

 Isaac claims that Defendants converted the proceeds from the sale of the Property. Specifically, she states that Reynold and Rhonda Crichlow sold the Property for $225,000.00 and retained the proceeds of the sale. Pl.'s Statement of Material Facts ¶¶ 16-17. The Court notes that

---

*Arizona, LLC v. 1993 CKC Trust Rogers*, 2008 Ariz. App. LEXIS 212, *38 (Ariz. Ct. App. 2008); *City Nat Bank of Fort Smith v. Goodwin*, 301 Ark. 182, 783 S.W.2d 335, 337-38 (1990); *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395, 58 Cal. Rptr. 3d 516 (2007); *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 884 (Colo. 1994); *Tansey v. Trade Show News Networks, Inc.*, 2001 Del. Ch. LEXIS 142, *24 (Del. Ch. Nov. 21, 2001); *Trust Co. of Columbus v. Refrigeration Supplies, Inc.*, 241 Ga. 406, 246 S.E.2d 282, 286 (1978); *Wiseman v. Schaffer*, 115 Idaho 537, 768 P.2d 800, 803 (1989); *In re Thebus*, 108 Ill. 2d 255, 483 N.E.2d 1258, 1260, 91 Ill. Dec. 623 (1985); *Yeager & Sullivan, Inc. v. Farmers Bank*, 162 Ind. App. 15, 317 N.E.2d 792, 797 (1974); *State v. Bonstetter*, 637 N.W.2d 161, 168 (Iowa 2001); *Scholfield Bros., Inc. v. State Farm Mut. Auto. Ins. Co.*, 242 Kan. 848, 752 P.2d 661, 663 (1988); *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 853 (Ky. Ct. App. 2014); *Mauboules v. Broussard Rice Mills*, 379 So.2d 1196, 1198 (La. Ct. App. 1980); *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, 48 A.3d 774, 783 (2012); *Wallace v. Lechman & Johnson, Inc.*, 354 Md. 622, 732 A.2d 868, 875 (1999); *Third Nat Bank of Hampden County v. Continental Ins. Co.*, 388 Mass. 240, 446 N.E.2d 380, 383 (1983); *Vanderhyde v. American Way General Ins. Co.*, 1999 Mich. App. LEXIS 388, *11 (Mich. Ct. App. Feb. 26, 1999); *PACCAR Financial Corp. v. Howard*, 615 So.2d 583, 588 (Miss. 1993); *Inland Const. Corp. v. Continental Cas. Co.*, 258 N.W.2d 881, 884 (Minn. 1977); *Knight v. M.H. Siegfried Real Estate, Inc.*, 647 S.W.2d 811, 814 (Mo. Ct. App. 1982); *Polley v. Shoemaker*, 201 Neb. 91, 266 N.W.2d 222, 225 (1978); *Edwards v. Emperor's Garden Restaurant*, 122 Nev. 317, 130 P.3d 1280, 1287 (2006); *Muzzy v. Rockingham County Trust Co.*, 113 N.H. 520, 309 A.2d 893, 894 (1973); *LaPlace v. Briere*, 404 N.J. Super. 585, 962 A.2d 1139, 1145 (2009); *Case Credit Corp. v. Portales Nat Bank*, 1998-NMSC-035, 126 N.M. 89, 966 P.2d 1172, 1174 (1998); *Thyroff v. Nationwide Mut. Ins. Co*, 8 N.Y.3d 283, 864 N.E. 2d 1272, 1275, 832 N.Y.S.2d 873 (2007); *Kawai America Corp. v. University of North Carolina at Chapel Hill*, 152 N.C. App. 163, 567 S.E.2d 215, 218 (2002); *Ritter, Laber and Associates, Inc., v. Koch Oil, Inc.*, 2004 ND 117, 680 N.W.2d 634, 638 (2004); *Misseldine v. Corporate Investigative Services, Inc.*, 2003-Ohio-2740, ¶ 42 (Ohio Ct. App. May 29, 2003); *Remington v. Landolt*, 273 Ore. 297, 541 P.2d 472, 479 (1975); *Martin v. National Sur. Corp.*, 437 Pa. 159, 262 A.2d 672, 675 (1970); *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 97 (R.I. 2006); *Young v. Century Lincoln-Mercury*, 309 S.C. 263, 422 S.E. 2d 103, 105 (1992); *Ames v. Oceanside Welding & Towing Co., Inc.*, 767 A.2d 677, 680 (R.I. 2001); *Simmonds v. TDCJ*, 2010 Tex. App. LEXIS 1338, *27 (Tex. App. Waco Feb. 24, 2010); *Montgomery v. Devoid*, 181 Vt. 154, 915 A.2d 270, 275 (Vt. 2006); *Potter v. Washington State Patrol*, 165 Wn.2d 67, 196 P.3d 691, 696 (2008); *Midwestern Helicopter, LLC v. Coolbaugh*, 2013 WI App 126, 351 Wis. 2d 211, 839 N.W.2d 167, 170 (2013); *Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 975 (Wyo. 1994).

money, which is personal property, may be the subject of a conversion. *Chase Manhattan Bank, N.A.*, 27 V.I. at 127. Additionally, "the cash proceeds of the sale of real property can be converted." *In re Verestar, Inc.*, 343 B.R. 444, 467 (Bankr. S.D.N.Y. 2006). The tort of conversion at common law does not require defendant's knowledge, intent, motive, mistake, or good faith, except for recovery of exemplary damages. *Morissette v. U.S.*, 342 U.S. 246, 253, 72 S. Ct. 240, 96 L. Ed. 288 (1952). As previously discussed, Isaac was entitled to an equitable interest in the Estate pursuant to 15 V.I.C. § 84(13). Viewing the record in a light most favorable to the non-moving party, the Court finds that Isaac has met her initial burden of showing the absence of a genuine issue of material fact and the burden of persuasion now shifts to the Defendants to show the existence of some genuine issue of material fact.

In their opposition to Isaac's motion for summary judgment, Defendants solely contend that Isaac has not provided evidence to show that she is entitled to an interest in the Estate of Henry Crichlow. Defs' Opp. to Pl.'s Mot. for Summ. J., 3. As this Court has determined that Isaac is entitled to an interest in the decedent's estate and in the absence of evidence by Defendants to show the existence of some genuine issue of material fact, the Court finds that Defendants exercised dominion over Isaac's lawful share of the proceeds of sale of the estate property. Therefore, the Court will grant summary judgment as to Isaac's conversion claim and she is entitled to an equitable share of the proceeds of the sale of the estate property.

## D. Count III: Fraudulent Misrepresentation

Count III of the Complaint seeks damages for Defendants' alleged misrepresentation to Isaac that they would administer the estate of Henry Crichlow's Estate which led Isaac to not participate in the administration of the Estate. As noted above, the Court finds that Isaac's misrepresentation claim is more appropriately described as a claim for fraudulent misrepresentation.

 Similar to a claim for conversion, fraudulent misrepresentation has also been traditionally defined by the Restatements. As previously discussed, a *Banks* analysis must be conducted to determine the applicable common law and soundest rule for the Virgin Islands. *Banks*, 55 V.I. at 984. The Court determines that RESTATEMENT (SECOND) OF TORTS § 525 reflects the common law of this jurisdiction. It defines

61

fraudulent misrepresentation as "[o]ne who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." RESTATEMENT (SECOND) OF TORTS § 525. This section has been cited by several cases in this jurisdiction. *See e.g., Island Insteel Systems, Inc. v. Waters,* 296 F.3d 200, 212, 44 V.I. 389 (3d Cir. 2002); *Stapleton v. WenVI, Inc.,* 2014 Tex. App. LEXIS 1338 (D.V.I. July 30, 2014); *Shealy v. West Indies Management Co.* 2011 V.I. LEXIS 58 (D.V.I. Dec. 5, 2011); *Shillingford v. Hess Oil of Virgin Islands,* 2009 U.S. Dist. LEXIS 53371 (D.V.I. June 18, 2009); *Lempert v. Singer,* 766 F. Supp. 1356, 26 V.I. 326, 339-40 (D.V.I. 1991); *V.I. Port Authority v. Callwood,* 2014 V.I. LEXIS 11 (V.I. Super. Feb. 28, 2014); *First American Development Group/Carib, LLC v. WestLB AG,* 55 V.I. 316 (V.I. Super. 2011); *Bank of America, N.A., & S.A. v. Moyer,* 18 V.I. 220, 227 (V.I. Terr. Ct. 1982). Second, a review of the case citations listed in the RESTATEMENT (SECOND) OF TORTS § 525 indicates that at least twenty-six states have a rule derived for, or similar to, the rule established in RESTATEMENT (SECOND) OF TORTS § 525. *See* RESTATEMENT (SECOND) OF TORTS § 525 — (Cases Adopting Common Law Principles of Fraudulent Misrepresentation by Jurisdiction).[10]

---

[10] *Vertrue, Inc. v. Meshkin,* 429 F. Supp. 2d 479, 497-98 (D. Conn. 2006); *Corporate Com'n of Mille Lacs Band of Ojibwe Indians v. Money Centers of America, Inc.,* 2012 U.S. Dist. LEXIS 159308 n.4 (D. Minn. Nov. 7, 2012); *Taylor v. Wells Fargo Home Mortg.,* 301 P.3d 182, 191-92 (Alaska 2013); *Echols v. Beauty Built Homes, Inc.,* 132 Ariz. 498, 647 P.2d 629, 632 (1982); *Small v. Fritz Companies, Inc.,* 30 Cal. 4th 167, 132 Cal. Rptr. 2d 490, 65 P.3d 1255, 1259 (2003); *Grunstein v. Silva,* 2014 Del. Ch. LEXIS 167 n.284 (Del. Ch. Sept. 5, 2014); *Chino Elec., Inc. v. United States Fidelity & Guar. Co.,* 578 So.2d 320, 322 n.4 (Fla. Dist. Ct. App. 1991); *Holmes v. Grubman,* 286 Ga. 636, 691 S.E.2d 196, 198 (2010); *Zanakis-Pico v. Cutter Dodge, Inc.,* 98 Haw. 309, 47 P.3d 1222, 1244 (2002); *Gold v. Vasileff,* 160 Ill. App. 3d 125, 513 N.E.2d 446, 448, 112 Ill. Dec. 32 (1987); *Kirk v. Farm & City Ins. Co.,* 457 N.W.2d 906, 909 (Iowa 1990); *Canterbury Court, Inc. v. Rosenberg,* 224 Kan. 493, 582 P.2d 261, 270 (1978); *Rutland v. Mullen,* 2002 ME 98, 798 A.2d 1104, 1111 (2002); *Ward v. Perna,* 69 Mass. App. Ct. 532, 870 N.E.2d 94, 101 (2007); *Zawaideh v. Nebraska Dept of Health and Human Services Regulation and Licensure,* 285 Neb. 48, 825 N.W.2d 204, 212 (2013); *Tessier v. Rockefeller,* 162 N.H. 324, 33 A.3d 1118, 1124 (2011); *McConkey v. AON Corp.,* 354 N.J. Super. 25, 804 A.2d 572, 593 (2002); *Williams v. Stewart,* 2005-NMCA-061, 137 N.M. 420, 112 P.3d 281, 290 (2005); *Century 21, Inc. v. F.W. Woolworth Co.,* 181 A.D.2d 620, 582 N.Y.S.2d 101, 104 (1992); *Russ v. TRW, Inc.,* 59 Ohio St. 3d 42, 570 N.E.2d 1076, 1084 (1991); *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994); *Federal Sav. And Loan Ins. Corp. v. First Central Inv. Trust,* 1986 Tenn. App. LEXIS

Finally, considering the longstanding application of the RESTATEMENT (SECOND) OF TORTS § 525 in this jurisdiction and the apparent widespread application of this rule in a majority of jurisdictions, the Court finds that the RESTATEMENT (SECOND) OF TORTS § 525 represents the soundest rule for the Virgin Islands, and is in accord with local public policy.

▉▉ In this case, Isaac has submitted her own affidavit stating that Rhonda and Reynold Crichlow are her siblings and that they have known each other as siblings for many years before their father's death. Aff. of Sharlene Isaac, ¶ 1-2. Isaac understood that Rhonda and Reynold Crichlow were settling Henry Crichlow's Estate. Pl.'s Statement of Facts ¶ 4. Based on their conversation, Isaac understood that Rhonda and Reynold Crichlow would keep in mind her interests. *Id.* at Ex. A. Relying on the statements made to her, Isaac refrained from participating in the probate proceeding. As a result, Isaac was omitted from the petition of settlement and did not take an equitable share of Henry Crichlow's Estate. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) ("While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made."). Viewing the record in a light most favorable to the non-moving party, the Court finds that Isaac has met her initial burden of showing the absence of a genuine issue of material fact. Thus, the burden of persuasion now shifts to the Defendants to show the existence of some genuine issue of material fact.

Defendants contend that Isaac failed to show proof of entitlement to a share of the decedent's property. Defs.' Opp. to Pl.'s Mot. for Summ. J., 3. In their motion to dismiss, Defendants concede that Isaac spoke to Rhonda Crichlow on or before February 19, 2007, concerning the probate of Henry Crichlow's Estate and was told that Defendants would handle the probate of the Estate. Defs' Mot. to Dismiss, 11. However, Defendants contend that Rhonda Crichlow did not believe Isaac had an interest in the Estate and did not make an agreement with her regarding the protection of her interest. *Id.* Defendants failed to submit an affidavit, exhibits, or a response to Isaac's statement of facts to support their contention.

2765 n.9 (Tenn. Ct. App. Feb. 11, 1986); *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 928 (Tex. 2010); *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 636 A.2d 744, 747-48 (1993); *Ware v. Scott*, 220 Va. 317, 257 S.E.2d 855, 857 (1979); *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, 283 Wis.2d 555, 592 n.5, 699 N.W.2d 205 (2005).

Therefore, the Court will grant summary judgment as to Isaac's claim for fraudulent misrepresentation.

## E. Count V: Civil Conspiracy

■ Count V of the complaint alleges civil conspiracy based on an alleged agreement between Reynold and Rhonda Crichlow to deprive Isaac of her rightful share of the estate of Henry Crichlow. The Virgin Islands Supreme Court has not explicitly conducted a *Banks* analysis to adopt the common law elements of civil conspiracy. Therefore, a *Banks* analysis must be conducted to determine the applicable common law and soundest rule for the Virgin Islands. *Banks*, 55 V.I. at 984. The Court determines that RESTATEMENT (SECOND) OF TORTS § 876(a) is a reflection of the common law of this jurisdiction. It states: "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he does a tortious act in concert with the other or pursuant to a common design with him." RESTATEMENT (SECOND) OR TORTS § 876(a). Although section 876(a) has not been explicitly cited with respect to civil conspiracy by courts in this jurisdiction, the Court finds that the regularly cited common law definition of civil conspiracy — an agreement or combination to perform a wrongful act, or lawful act by unlawful means, that results in damage to the plaintiff — is in accord with the principles of RESTATEMENT (SECOND) OF TORTS § 876, is widely accepted, and is fundamental to the practice of law in the Virgin Islands.[11] Additionally, based on its acceptance in a majority of jurisdictions in the United States,[12] the Court finds that maintaining this definition for civil

---

[11] *See e.g., Garnett v. Legislature*, 2014 U.S. Dist. LEXIS 180681 (D.V.I. March 7, 2014); *Berrios v. Hovic*, 2010 U.S. Dist. LEXIS 77525 (D.V.I. July 29, 2010); *Shomo v. Mugar Enterprises*, Inc. 52 V.I. 918, 928 (D.V.I. 2009); *Government Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 456, 35 V.I. 356 (D.V.I. 1997]; *Sorber v. Glacial Energy VI, LLC*, 2013 V.I. LEXIS 12 (V.I. Super. Mar. 7, 2013); *Hill v. De Jongh*, 2012 V.I. LEXIS 11 (V.I. Super. Apr. 19, 2012); *Guardian Ins. Co. v. Khalil*, 59 V.I. 892 (V.I. Super. July 26, 2012).

[12] *Ellington v. Federal Home Loan Mortg. Corp.*, 13 F. Supp. 3d 723, 730 (W.D. Ky. 2014); *Ex parte Alamo Title Co.*, 128 So.3d 700, 713 (Ala. 2013); *Estate of Hernandez by Hernandez-Wheeler v. Flavio*, 187 Ariz. 506, 930 P.2d 1309,1314 (1997); *Ballard Group, Inc. v. BP Lubricants USA, Inc.*, 2014 Ark. 276, 436 S.W.3d 445, 455 (2014); *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1056-57 (Colo. 1995); *Chapman Lumber, Inc. v. Tager*, 288 Conn. 69, 952 A.2d 1, 23 (2008); *AeroGlobal Capital Management, LLC v. Cirrus Industries, Inc.*, 871 A.2d 428, 437 n. 8 (Del. 2005); *Wilson v. Mountain Valley Community Bank*, 328

conspiracy is the soundest rule for the Virgin Islands. *See Machado v. Yacht Haven, U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014) (determining that the fundamental elements of negligence represent the soundest rule for the Virgin Islands).

 Now that the soundest rule for the Virgin Islands has been determined, it is now necessary to determine the proof necessary to succeed on a claim for civil conspiracy. It is well-settled that a conspiracy can be proven by circumstantial evidence in the absence of an express qualifying agreement. *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001). "An express agreement among all conspirators is not a necessary element of civil conspiracy as long as the participants in the conspiracy share a general objective or the same motives for desiring the same conspiratorial result." *Fisher v. Borough of Doylestown*, No. 02-4007, 2003 U.S. Dist. LEXIS 23943, at *8 (E.D. Pa. Dec. 10, 2003) (internal quotations and citation omitted). The existence of a conspiracy can be inferred "from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants. . . could not have been carried on except as the result of a preconceived scheme or common understanding." *United States v. Ellis*, 595 F.2d 154, 160 (3d Cir. 1979), "There is no liability for civil conspiracy where there is no liability for the act or acts underlying the conspiracy." *Mieczkowski v. York City School Dist.*, 414 Fed. Appx. 441,

---

Ga. App. 650, 759 S.E.2d 921, 924 (2014); *Bimba Mfg. Co. v. Starz Cylinder Co.*, 119 Ill. App. 2d 251, 256 N.E.2d 357, 365 (1969); *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 653 (Ind. Ct App. 2014); *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 171 (Iowa 2002); *Wooley v. Lucksinger*, 61 So.3d 507, 614 n.303 (La. 2011); *Gallagher Bassett Services, Inc. v. Jeffcoat*, 887 So.2d 777, 786 (Miss. 2004); *Brass Metal Products, Inc. v. E-J Enterprises, Inc.*, 189 Md. App. 310, 984 A.2d 361, 386 (2009); *Advocacy Org for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 670 N.W.2d 569, 580 (2003); *Jones v. Montana University System*, 2007 MT 82, 337 Mont. 1, 155 P.3d 1247, 1256 (2007); *deNourie & Yost Homes, LLC v. Frost*, 289 Neb. 136, 854 N.W.2d 298, 315 (2014); *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 971 P.2d 1251,1256 (1998); *Seeds v. Lucero*, 2005-NMCA-067, 137 N.M. 589, 113 P.3d 859, 862 (2005); *Peterson v. North Dakota University System*, 2004 ND 82, 678 N.W.2d 163, 174 (2004); *Davis v. Clark City Bd. Of Comm'rs*, 2013-Ohio-2758, 994 N.E.2d 905, 909 (Ohio Ct. App. 2013); *Osborne v. Fadden*, 225 Ore. App. 431, 201 P.3d 278, 282 (2009); *Pye v. Estate of Fox*, 369 S.C. 555, 633 S.E.2d 505, 566-67 (2006); *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38,58-9 (Tenn. Ct. App. 2013); *PAS, Inc. v. Engel*, 350 S.W.3d 602, 616 (Tex. App. 2011); *Adams v. King County*, 164 Wn.2d 640, 192 P.3d 891, 901 (2008); *City of Milwaukee v. NL Industries, Inc.*, 2005 WI App 7, 278 Wis. 2d 313, 691 N.W. 2d 888, 896 (2004).

450 (3d Cir. 2011) (*citing Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000)).

Isaac has not submitted evidence to support a finding that Defendants Reynold and Rhonda Crichlow, with the assistance of their attorney, made an express agreement to perform wrongful acts resulting in harm to her. However, Isaac has provided circumstantial evidence to support her claim that Defendants shared a general objective to omit her from the probate proceedings and retain the proceeds of the sale of Henry Crichlow's Estate. Isaac has submitted her own affidavit stating that Rhonda and Reynold Crichlow are her siblings and that they have known each other as siblings for many years before their father's death. Aff. of Sharlene Isaac, ¶ 1-2. She states that after a conversation with Rhonda Crichlow immediately following Henry Crichlow's death, she understood that Defendants would keep her interest in mind with respect to managing Henry Crichlow's Estate. *Id.* at ¶ 3. Yet, Isaac was omitted from the petition for settlement without administration filed by Rhonda Crichlow, and the Final Adjudication and Decree of Distribution. Pl.'s Statement of Facts ¶ 9. Adjudication was made without notice to Isaac and without Isaac having an opportunity to be heard. *Id.* at ¶ 14. Defendants then sold the Property inherited from the Estate of Henry Crichlow and retained the proceeds. *Id.* at Ex. D.

 While Isaac has provided evidence of a collaborative effort by Defendants to sell the Estate, she has failed to show that Rhonda and Reynold Crichlow's actions were based on an agreement, general objective, or preconceived scheme between them. "Allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009). The Court notes that Reynold Crichlow did not file the petition for settlement without administration, nor is there any indication that Reynold Crichlow communicated with Isaac in an effort to mislead her. Based on the record before the Court and viewing the evidence in a light most favorable to the non-moving party, the Court finds that a reasonable trier of fact could determine that there was no conceived scheme between the Defendants. Therefore, the Court finds that Isaac is not entitled to judgment as a matter of law on her claim of civil conspiracy.

## F. Count VI: Unjust Enrichment

 Count VI of the complaint alleges that Defendants have been unjustly enriched and Isaac is therefore entitled to a constructive trust over the property of the Estate and all amounts derived from the sale of any property of the Estate. "Unjust enrichment is an equitable quasi-contract cause of action, imposing liability where there is no enforceable contract between the parties 'but fairness dictates that the plaintiff receive compensation for services provided.' " *Cacciamani and Rover Corp. v. Banco Popular De Puerto Rico*, 61 V.I. 247, 251 (V.I. 2014). In order to prove unjust enrichment, a plaintiff must show: "(1) that the defendant was enriched; (2) that such enrichment was at the plaintiffs expense; (3) that the defendant had appreciation or knowledge of the benefit; and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff." *Walters v. Walters*, 60 V.I. 768, 780 (V.I. 2014). Although the Supreme Court of the Virgin Islands in *Walters* did not consider what level of awareness of the benefit is necessary to succeed on a claim of unjust enrichment, this Court finds that of the majority of jurisdictions that have adopted the element that "the defendant appreciated the benefit conferred upon it," have stated that "a defendant's mere awareness of receipt of a benefit at the plaintiffs expense will suffice." *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007). Unjust enrichment is an equitable remedy and therefore cannot be asserted when a valid contract concerning the same subject matter in dispute exists between the parties. *Cacciamani and Rover Corp.*, 61 V.I. 247.

 While Isaac has not argued that a valid contract existed between the parties, she has submitted evidence to support a finding that Defendants were enriched by Isaac's failure to participate in the administration of Henry Crichlow's Estate. Isaac submitted an affidavit stating that Rhonda and Reynold Crichlow are her siblings and that they have known each other as siblings for many years before their father's death. Aff. of Sharlene Isaac, ¶ 1-2. Defendants were aware that the Final Adjudication and Decree of Distribution rendering them the 100% owners of Heniy Crichlow's Estate was a benefit at Isaac's expense as she was omitted from the petition for settlement without administration. Pl.'s Statement of Facts ¶ 9. Defendants' knowledge of the benefit is further evidenced by Rhonda Crichlow statement that, "you've nothing to do

67

with that, the house does not concern you," when Isaac inquired as to the status of Henry Crichlow house and whether it was being rented. *Id.* at ¶ 6. Therefore, the Court finds that Isaac has met her initial summary judgment burden of showing the absence of a genuine issue of material fact and equity requires that Defendants should return a share of the proceeds of the sale of the Estate to Isaac.

 Defendants have failed to respond to Isaac's unjust enrichment claim. In fact, Defendants' opposition to Isaac's motion for summary judgment solely rests on the claim that Isaac has not provided sufficient evidence to show that she is entitled to the property of Henry Crichlow. Therefore, because the burden shifted to Defendants to provide proper proofs and Defendants failed to do so, this Court finds that there are no genuine issues as to any material fact regarding unjust enrichment and that Isaac is entitled to judgment as a matter of law. Moreover, based on the Court's identification of money in the Defendants' possession which lawfully can be traced to the sale of the Property, the Court finds that Isaac is entitled to a constructive trust. *See Skretvedt v. E.I. Dupont de Nemours*, 372 F.3d 193, 211 (3d Cir. 2004) ("[A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.")

## G. Count VII: Equitable Accounting

 Isaac claims that due to Defendants' fraud, conversion, misrepresentation, and unjust enrichment, she is entitled to an accounting of Henry Crichlow's Estate. "An equitable accounting is a remedy of restitution where a fiduciary defendant is forced to disgorge gains received from the improper use of the plaintiffs property or entitlements." *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 5 F. Supp. 2d. 324, 327, 38 V.I. 431 (D.V.I. 1998). A plaintiff makes a "prima facie case by showing [1] a breach of [2] fiduciary duty plus [3] gross receipts resulting to the fiduciary, and the defendant must prove what deductions are appropriate to figure the net profit." *Gov't Guarantee Fund of Republic of Finland*, 955 F. Supp. at 466 (D.V.I. 1997). The absence of an adequate remedy at law is a prerequisite to the right to maintain a suit for an equitable accounting. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962). "If an adequate remedy at law exists for

68

a given claim, the party seeking an equitable accounting must demonstrate that the accounts between the parties are of such a 'complicated nature' that only a court of equity can unravel them." *Id.*

■■■ In this case, Isaac asserts causes of action for fraud upon the court, conversion, fraudulent misrepresentation, and civil conspiracy. Each of these claims permits Isaac to assert the Defendants' personal liability and obtain monetary damages. Since Isaac has an adequate remedy at law and has failed to show the complicated nature of the accounts between the parties, the Court will deny Isaac's request for equitable accounting as a remedy in this matter. *See Genica, Inc. v. Holophane Div. of Manville Corp.*, 652 F. Supp. 616, 620 (E.D. Pa. 1987) ("Where there is an adequate remedy at law, an accounting — an equitable remedy — is not available as a substitute for damages.")

## H. Isaac's Requests for Prejudgment Interest on the Proceedings from the Sale of the Real Property and Punitive Damages are Not Causes of Action and will be heard by the Court at a Later Date.

Isaac states that she is entitled to prejudgment interest on the sale of the Clifton Hill property and punitive damages due to Defendants' willful and tortuous conduct.

■■■ The grant or denial of prejudgment interest remains within the sound discretion of the trial court. *DeWerd v. Bushfield*, 993 F. Supp. 365, 38 V.I. 202, 206 (D.V.I. App. Div. 1998). "[A]s a general rule, pre-judgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due." *Skretvedt*, 372 F.3d at 208. Here, the Court is unable to ascertain the amount of the underlying liability owed to Isaac. The Court similarly finds that an award of punitive damages is premature at this time.[13]

---

[13] With regards to Isaac's request for punitive damages, the Superior Court of the Virgin Islands in *Powell v. Chi-Co's Distributing, Inc.*, 2014 V.I. LEXIS 21 (V.I. Super. Ct. Apr. 3, 2014) applied a *Banks* analysis and adopted the RESTATEMENT (SECOND) OF TORTS § 908(2) as reflection of the common law of this jurisdiction. RESTATEMENT (SECOND) OF TORTS § 908(2) provides that "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." While this Court is not bound by *Powell*, it agrees with the *Powell* court's reasoning and will

69

Therefore, Isaac's request for prejudgment interest and punitive damages will be addressed by the court at a later proceeding for the assessment of damages.

## IV. CONCLUSION

For the reasons stated above, this Court finds that Isaac is entitled to relief pursuant to 15 V.I.C. § 84(13) and that she is entitled to summary judgment on her causes of action for conversion, fraudulent misrepresentation, and unjust enrichment. Isaac's independent action for fraud upon the Court, civil conspiracy, and equitable accounting present genuine disputes as to material facts and therefore summary judgment is denied. Accordingly, those claims remain outstanding for resolution at trial. Defendants' motion to dismiss, construed as a motion for summary judgment, is also denied because Defendants failed to establish the absence of a genuine dispute as to any material fact.

An appropriate Order follows.

---

adopt its holding that RESTATEMENT (SECOND) OF TORTS § 908(2) is a reflection of the common law in this jurisdiction as it relates to punitive damages.